ADT v. E. KIRSTEIN SONS CO.

(District Court, W. D. New York.   January 8, 1918.)

1. PATENTS ⊗⇒327—PRECEDENTS—DECISION OF CIRCUIT COURT OF APPEALS.
    A decision of a Circuit Court of Appeals on the validity of a patent
should, in the interest of uniformity of federal decisions; be accepted and
followed by a District Court of another district, where the same patent is
involved, unless evidence is presented that is essentially different and per-
suasive of an opposite conclusion.

2. PATENTS ⊗⇒328—VALIDITY—NOVELTY.
    The Adt patent, No. 1,040,094, claim 12, and reissue patent No. 13,466,
claims 28 and 50, etc., as well as patents No. 1,040,096, claims 5 and 18,
and No. 1,173,912, all relating to eyeglass mountings, held in view of
the prior art, invalid for want of novelty and invention.

3. PATENTS ⊗⇒178—MECHANICAL EQUIVALENTS.
    The patent law does not permit an inventor to arrange the various parts
to cover the entire idea, and thus exclude mechanical equivalency and the
results accomplished.

In Equity.
Suit by Leo F. Adt against the E. Kirstein Sons Company.  Decree
for defendant.
Affirmed, 259 Fed. 561, —— C. C. A. ——.

Church & Rich, of Rochester, N. Y. (Frederick F. Church, of Roch-
ester, N. Y., and Melville Church, of Washington, D. C., of counsel),
for plaintiff.

Davis & Simms, of Rochester, N. Y. (Percival D. Oviatt and C. S.
Davis, both of Rochester, N. Y., of counsel), for defendant.

HAZEL, District Judge.  We are here concerned with the alleged
infringement by the defendant company of various letters patent re-
lating to eyeglass mountings, issued to Leo F. Adt, as follows:  Re-
issue letters patent No. 13,466, dated September 17, 1912 (originally
No. 1,019,115, dated March 5, 1912), patents Nos. 1,040,094 and 1,-
040,096, both dated October 1, 1912, and patent No. 1,173,912, dated
February 29, 1916.  Infringement is asserted since the cancellation,
February 26, 1916, by mutual consent of a license to manufacture and
sell the eyeglasses in question; the defendant continuing to market
eyeglasses with nose bearing pads pivoted and actuated towards each
other and separated by a spring, and having means for spreading the
glasses apart.  Such eyeglasses are illustrated in defendant's structures,
Model G mounting and Model G Modified or Model G Intermediate
mounting in evidence, which plaintiff claims are infringements of his
patents in evidence, viz.:  Model G of claims 2 and 28 of the reissue
patent, claim 5 of patent No. 1,040,096, and claims 1 and 2 of patent
No. 1,173,912, and Intermediate Model G, of claims 2, 28, 43, and 50
of the reissue patent, claims 5 and 18 of patent No. 1,040,096, and
claim 12 of 1,040,094, in suit.

[1, 2]  The defense is want of novelty and invention in view of the
prior state of the art.  The patentee concededly was not the first to pro-

vide eyeglasses with nose guards and finger pieces pivotally mounted on a table or support between the arch of the bridge and the abutting lenses; nor did he first interpose a wire spring and lever on the table or support between the bridge and connecting lenses for use in spreading apart the nose pads for gripping the nose. Such a device and arrangement of parts were first used by Jules Cottet (patent No. 560,895, dated May 26, 1896), and their practicability and usefulness are beyond question. Adt, however, claims that there were various objections to the Cottet mounting: First, the spring was exposed, and therefore dirt and dust were likely to collect on the coil surfaces; second, the parts were faultily arranged, causing the finger piece lever to wobble; and, third, to replace a broken spring the nose gripping unit had to be dismantled. To overcome such objection he claims to have made by stages patentable improvements eventuating in the fourth patent in suit as embodied in defendant's Model G mounting, wherein the flat spring is readily detachable. Importance is attached in each patent to the specific details of construction, the character of the lever, screw head, spring, and assembling of parts, which finally, it is contended, overcame the objections to prior mountings of the finger piece type.

It is necessary to familiarize oneself with the various modifications that were made, for at the outset it is questionable whether any involved invention. Two of such patents—the reissue (15 claims) including claims 2, 28, and 43, here in controversy, and No. 1,040,096—were held invalid by the Circuit Court of Appeals for the First Circuit (Adt v. Bay State Optical Co., 226 Fed. 925, 141 C. C. A. 529), leaving for this court to pass upon claim 50 of the reissue, claims 5 and 18 of No. 1,040,096 (substantially similar to claims 26, 27, and 29, involved in the Bay State Case), and claim 12 of No. 1,040,094, said to cover defendant's Model G Modified mounting, and the two claims of patent No. 1,173,912, bearing on the spring arrangement, as shown in Model Exhibit 9. The District Court and the Circuit Court of Appeals for the First Circuit decided substantially that the structural differences in the various patented mountings considered by them were simply modifications of a single species and substitutions of one for another, and did not involve invention. This decision practically determines the status of the subject-matter, and, unless the evidence now presented is essentially different and persuasive of an opposite conclusion, it should in the interest of uniformity of federal decisions be accepted and followed by this court. As letters patent and claims are in issue here that were not expressly passed upon in the former suit, they will be briefly taken up in connection with the prior art.

All, or nearly all, of the involved claims relate to exceedingly small differentiations in structural parts and the manner of assembling them. In dealing with the reissue patent it will suffice to set out claim 28 only, which is descriptive of the improvement:

"28. In an eyeglass mounting, the combination with a support having a seat on one side thereof, of a headed pivot projecting from the seat, a projection on the opposite side of the support aligned with the pivot, a nose guard turning on the pivot in engagement with the seat and head, and a coil spring for positioning the guard surrounding the projection on the opposite side of the support."

Claim 2 also describes a guard pivoted on one side of the support with a flat spiral spring below it. Claim 43 positions the spring beneath the support or bridge, and refers to a guard lever held in rigid bearings, while claim 50 broadly recites the combination with a support and pivoted guard lever of a coil spring in a flat spiral, its outer end acting against one of said parts, and its inner end extending beyond the circumference permitting it "to act against the other part."

On comparing the structure of the reissue patent with the Cottet disclosure, it will be observed that the modifications are slight. The patentee appears to have worked assiduously in this art to evolve changes and modifications in prior mountings, as quite a number of patents, granted to him previously, but not in suit, especially Nos. 862,- 368 and 872,211, would seem to prove. He seems to have believed that the coil spring in the Cottet structure mounted on top of the support would easily break and that the guard lever held down by it would wobble, and therefore he designed to locate under the support another kind of spring to insure firmness. He extended the spring used by him outwardly from the center, looping it to contact with the upper part of the support under the screw head and then forming a convolution for the finger and nose piece—all in one, the other end of the spring being screwed down on the lens frame. In Cottet the spring was held down on the guard lever by the screw head, the upper end being anchored on the lens. Adt's convolution of the spring, though unique to the uninformed, nevertheless comprised a mounting not essentially different from prior mountings in evidence, either as to form, location, or anchorage at their ends. He does not appear to have secured ready removability of the spring in the reissue patent as it was apparently necessary to remove the guard lever in removing the spring; while in the Cottet mounting, as witnesses testified, the coil spring, when broken, was easily removed with pinchers.

It was not a new expedient to anchor to the lens screw a spring used to position the guard. The Wells patent, No. 813,030, shows such an arrangement. The feature of screwing the lever down to the support with the head of its pivot on top to prevent wobbling was also used before in this art. See Bertolini model in evidence and patents to Pritchard, to Wells (Fig. 11) and to Terstegen, which also shows lever held between the support and the pivot head. Nor is it believed to have involved invention to reverse the screw, for example, of the Wells patent and cause it to project into the support from the lower side so as to establish a bearing between the support and pivot head. See Wells patent, No. 813,030. In the Finch patent, No. 709,574, the mounting is located on the opposite side of the support from the guard lever, while a coiled spring is wound around a center projection; and in the prior Chapel patent the lever is firmly held by lugs on the frame. Nor are such structures differentiated by the adaptation of a flat spiral spring in combination with a wider space for positioning it, as in the prior Schild patent, No. 709,824, we find a flat spring coiled around a projection with the inner coil extended across the surrounding coils for the purpose of making connection away from the coil. By putting the flat spring below the support on a line with the pivot of the guard, the

patentee quite likely secured adequate space for increasing the rigidity of the guard lever; but it is nevertheless believed that to increase the space about the central post under the support, for coiling a flat spring instead of a round spring, which did not require such space, and then extending the ends of the spring to engage opposite sides of the guard lever, did not involve invention, and the flat spring with ends extended was the mechanical equivalent of a round spring with arms reaching away from the coil for anchoring, and imparted rigidity to the guard lever.

In departing from the combination by adapting additional elements or arranging old elements differently for confining the guard arm or for carrying the inner spiral spring away from the center of the coil outwardly, the patentee made changes or modifications which do not appear to have secured any new advantages or results. The specific claims here in issue do not embody anything novel, and the old elements are not so combined as to attain a new and useful result, or a result essentially different from that obtained in the prior Cottet mounting, which, concededly, was an original discovery. Indeed, as said by the Circuit Court of Appeals in the former suit, speaking of the Cottet patent:

"In this patent the idea was clearly in the mind of the patentee to control guard levers pivoted on the frame by means of springs and to leave the detailed arrangement of the parts to the judgment of the mechanic."

[3] In patent No. 1,040,094, the twelfth claim in issue relates to another method of connecting the outer end of the spring to the guard, the inner end extending outwardly across the coils to engage the guard lever or other fixed part. Modified Model G mounting is asserted to be an infringement of this claim and of claim 50 of the reissue and claim 18 of patent No. 1,040,096. Defendant contends that such claims are essentially similar, and that double patenting resulted from their allowance. Claim 12 reads:

"12. In an eyeglass mounting, the combination with a support for the lenses and a finger piece guard lever having a pivotal bearing thereon, of a coil spring for positioning the guard wound in a flat spiral about the axis thereof, the outer end being arranged to act upon the guard and the inner end being provided with an arm extended outwardly radially of the spiral and acting against the support."

The specification in referring to the winding of the spring says:

"It is advantageous to run the arm 10 radially or diametrically from the far side of the inner convolution as shown so that it passes through the axis, one of the reasons of this being that the inner convolution is thereby flexed inwardly towards the center rather than otherwise with the result that there is no tendency for it to prevent the free inward flexing or contracting of an intermediate or outer convolution."

From this it would seem that the patentee wanted to connect the guard lever to the end of the spring running from the outer coil in order to obtain desired flexibility, and to accomplish this he extended the inner arm of the spring across the coils and anchored it to a part of the support. The specific manner of anchoring the spring is the only feature distinguishing the involved claim from claims 50 and 18. In

claim 50 the inner end of the spring extends outwardly and is then looped to connect with the guard lever, while in claim 18 the inner end of the spring extends outwardly from the center of the coil and is detachably connected to a support.

It was not only quite common to use a volute spring to obtain the required resiliency in an eyeglass mounting, but it was neither new nor novel to have the inner coil of a spring in the mounting extended outwardly above the coils so as to make a connection on a stationary part of the mounting. True enough, the exact details or specific arrangement of the claims now considered were not contained in the prior patents in evidence, but the details and their arrangement in such structures certainly suggest various ways of arranging parts and extending the ends of the springs for making connections, and the specific adaptations of the claims were changes of form only such as a skilled mechanic could make. See, for example, Schild patent, No. 709,824, model in evidence, and Adt patents, Nos. 1,019,116 and 1,019,117, claim 17, and handy Shur-On mounting of patent to Adt, No. 862,368. The patent law does not permit an inventor to variously arrange the parts to cover the entire idea—in this case to variously extend the end of the flat spring away from the coils for anchoring the same with one of the other parts and thus exclude mechanical equivalency and the results accomplished. Hence, claim 12, claim 50 of the reissue, and claim 18 of patent No. 1,040,096, are invalid for want of novelty.

Patent No. 1,040,096 is an alleged improvement on the two earlier Adt patents in suit; the flat spiral spring under the support being readily detachable from its position, independently of the guard lever. Claims 5 and 18 are in issue. The latter has been treated; the former reads as follows:

"5. In an eyeglass mounting, the combination with a support and a finger piece guard lever arranged to turn thereon, of a centering projection on one of said parts located to one side of both of them and having a free end and a fixed end, a spring coiled about the projection and detachable therefrom over its free end independently of the other parts, and connections between the spring ends and the first two mentioned parts respectively, held in engagement by the action of the spring."

The modification made by the patentee appears to consist of the frictional engagement of the outer end of the spring in a slot on the finger piece, the inner end engaging a notch formed by a small hook directly over the support, thus allowing the spring to be lifted from its position by simply disengaging its ends. This adaptation no doubt permits free detachability of the spring, and as to such feature stands out more distinctively than any of the other Adt patents; still, considering the manner in which the spring (integral with the guard lever) of the reissue patent and the feature of detachability in plaintiff's patent No. 1,019,214 (not in issue, but a division of the reissue) was attached, I am persuaded that claim 5, assuming that it is valid, is entitled to a protection only of the specific form of detachably connecting the spring. Thus limited, defendant's adaptation is not an infringement. In Adt patent, No. 1,019,214, held invalid in the Bay State Case, the inner end of the spring rested in a slotted portion at the end of the lever on the under side of the spring. The only perceivable difference

between such adaptation and the interlocking arrangement of the spring in the patent under consideration is that the outer end engages a notch or slot in the finger piece, while the inner end rests in a socket formed on the side of the spring.

In claim 3 of Adt's patent, No. 1,019,116 (not in issue), the feature of ready detachability is broadly claimed, and in claims 26 and 29 reference is made to a free arm on the lever detachably engaging the spring arm which is not unlike defendant's mountings wherein the spring is bent to contact the lever. The Wells patent (Figures 12 and 13), shows a detachable coil spring which may be removed separately from the nose guard and which also is similar to defendant's types of mountings (Model G, Model Intermediate G and Shur-On). Reference is made by counsel for defendant to other patents to show that broad construction to include all detachable coiled springs would not be proper, but it would be idle to deal with them, as defendant's seems to me to be different. All ready detachability does not come within the claim.

Patent No. 1,173,912 is descriptive of defendant's specific structure Model G, and has two claims in combination which are limited to the lateral lug at the end of the post or projection at the center of the coils and to anchoring the spring at its inner end to the shoulder of the post. The patentee had previously in Model Exhibit F anchored the inner end of the spring by inserting it in an aperture in the bridge; but, believing that such anchoring impaired the stability of the bridge, he thought it would be simpler to put "the lug at the end of the tube and have the lug on the spring and engage this projection, rather than pass up through the hole of the bridge." By co-operatively arranging the inner end of the flat spring it may be readily detached from the mounting. Both claims of the patent relate to the same subject-matter as do the other patents in controversy, and the results accomplished are the same.

The claims, I think, are anticipated by the prior patents to Adt, Nos. 1,019,117 and 1,095,367. While the patentee's earlier modifications were not exactly reproduced in No. 1,173,912, still there was a close approach thereto. In patent No. 1,019,117, a flat centering post is specified surrounded by a flat inner coil and a lateral lug at the end of the post for retaining the coil in place; while in patent No. 1,095,367 is shown a combination of elements for producing substantially the same result as the patent in suit, which seems to me to have been merely a different way of attaching the spring to the support and nose guard. Besides, in the Stevens' patent, No. 956,220, there are disclosed elements in combination quite similar to the combination in suit. The centering projection in the Stevens' structure has a lug at its outer end (see Fig. 5), a spiral spring surrounding the projection, and an extension of the inner end of the spring which engages the lug; while the outer end connects the guard lever. The Clulee patent, No. 995,661, also shows a projection at the lower end of a post over which its flat spring may be fitted or removed; the inner end of the spring interlocking with the post, and the outer end connecting with the guard, substantially as in the claims in controversy.

In determining the various questions presented and argued at the bar, it is not deemed necessary to deal more at length with the many prior patents and types of structures in evidence, or even with the file wrappers and contents of the patents in suit. I substantially concur in the opinion in the Bay State Case that the claims were evidently drawn to include every kind of a combination of which the elements are capable without describing anything patentably different from that described in prior patents to which attention is herein directed, excepting perhaps claim 5 of patent No. 1,040,096 which, however, is not infringed by defendant's mountings. A decree in conformity with these views may be entered, with costs.